**No. 25-10322**
_____

**In the United States Court of Appeals
for the Fifth Circuit**
_____

**United States of America**,
*Plaintiff-Appellee*,

v.

**Paul Anthony Williams**,
*Defendant-Appellant*
_____

Appeal from the United States District Court
for the Northern District of Texas
Fort Worth Division
4:24-cr-00223-O-1
_____

**INITIAL BRIEF OF APPELLANT**
_____

JASON D. HAWKINS
FEDERAL PUBLIC DEFENDER

KEVIN JOEL PAGE
ASSISTANT FEDERAL PUBLIC DEFENDER
525 South Griffin
Suite 629
Dallas, Texas 75202
(214) 767-2746

*Counsel for Appellant*

## Certificate of Interested Persons

The undersigned certifies that the following persons have an interest in the outcome of this case, docketed in the district court at 4:24-CR-00223-O-1. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

**Federal District Judge:**        Hon. Reed C. O'Connor

**Federal Magistrate Judges:**        Hon. Jeffrey L. Cureton
Hon. Hal R. Ray, Jr.

**Defendant:**        Paul Anthony Williams

**Federal Public Defender:**        Jason D. Hawkins

**Defense Counsel:**        Joshua Smith Rhodes
Rachel Maureen Taft
Kevin Joel Page

**United States Attorneys:**        Nancy Larson (acting)
Leigha Simonton (former)
Chad Meacham (former acting)

**Assistant U.S. Attorneys:**        Michael James Ferry
Eric Chen
P.J. Meitl
Stephen S. Gilstrap


/s/ Kevin Joel Page
Kevin Joel Page
Counsel for Appellant

## Statement Regarding Oral Argument

Oral argument may be helpful to address an issue of first impression in this Court: whether California robbery—which does not require an intentional use of force against the victim—qualifies as "robbery" as defined under the 2023 Guideline Amendments?

# Table of Contents

Certificate of Interested Persons..................................................................................ii

Statement Regarding Oral Argument.........................................................................iii

Table of Contents .......................................................................................................iv

Table of Authorities...................................................................................................vii

Jurisdictional Statement ............................................................................................. 1

Issues Presented for Review....................................................................................... 2

Statement of the Case ................................................................................................. 3

Summary of the Argument ......................................................................................... 5

Argument.................................................................................................................... 9

I.    The district court made two errors in calculating the Guidelines range, neither of which can be dismissed as without prejudice................................. 9

A.   The district court erred by characterizing California robbery as a "crime of violence" under the Guidelines. ...................................................... 9

   1.   *De novo* review applies.................................................................... 9

   2.   California robbery is not a "crime of violence" under § 4B1.2(a). .......... 9

   3.   California robbery is not a crime of violence under the force prong, because it can be committed negligently............................... 11

   4.   This Court's precedent deeming California robbery a crime of violence predates the 2023 Guidelines Amendment and is no longer binding. ......................................................................... 12

   5.   The new Guidelines definition of "robbery"—which was modeled after and is identical to Hobbs Act robbery—requires the intentional use of force................................................................ 16

   6.   Because California robbery can be committed by accidentally or negligently using force, it lacks the "intentional" mens rea required by the Guidelines definition. ............................................ 19

B.  The district court plainly erred by counting two criminal history points based on a conviction where Appellant was sentenced to 364 days imprisonment without the benefit of counsel. ...................................23

    1.  Plain error review applies. ...............................................................23

    2.  The certified docket establishes that Appellant was not represented by counsel when the state court imposed a sentence of incarceration at a revocation proceeding. ....................................................23

    3.  Enhancing a sentence based on an uncounseled conviction is plain error...................................................................................................25

    4.  The error affected his substantial rights and warrants the Court's correction. ......................................................................................26

C.  The impact of the two Guidelines errors cannot be dismissed as without prejudice...................................................................................27

    1.  The record does not support a finding of no prejudice under the more demanding *Ibarra-Luna* test, where the sentence coincides with the low-end of the incorrectly calculated range and the court did not otherwise explain or justify the sentence...............................30

    2.  Thee 77-month sentence falls well outside the correct Guidelines range, and court made no statements justifying an upward departure or variance.....................................................................................35

    3.  The boilerplate disclaimer of reliance on the Guidelines routinely appears in cases sentenced by this court, and should not be used to bar appellate review. ................................................................38

II.  Under *Bruen* and *Diaz*, § 922(g)(1) is unconstitutional as-applied to Appellant [foreclosed]...................................................................42

  A.  The standard of review is *de novo*. .............................................42

  B.  *Diaz* limits the kinds of felonies that can justify depriving a citizen of his Second Amendment rights. ..............................................42

  C.  Appellant submits for further review that as-applied to him, § 922(g)(1) violates the Second Amendment. ................................45

D. The government cannot carry its burden under *Diaz*................................ 45

III. Courts either have misconstrued § 922(g)(1), or Congress did not validly exercise its Commerce powers [foreclosed]. .................................................. 49

A. The standard of review is *de novo*. ............................................................. 49

B. Correctly interpreted, § 922(g)(1) requires more than the indicted firearm's past movement in commerce for Appellant to possess it in or affecting commerce. .............................................................................. 49

C. Even if the prevailing interpretation is correct, § 922(g)(1) exceeds Congress's enumerated powers................................................................. 50

Conclusion.............................................................................................................. 53

Certificate of Service............................................................................................. 54

Certificate of Compliance ..................................................................................... 55

# Table of Authorities

**Page(s)**

## Federal Cases

*Alderman v. United States*,
562 U.S. 1163, 131 S. Ct. 700 (2011) ..................................................... 51, 52

*Borden v. United States*,
593 U.S. 420 (2021) ................................................................ *passim*

*Bridges v. United States*,
991 F.3d 793 (7th Cir. 2021) ........................................................... 17

*Custis v. United States*,
511 U.S. 485 (1994) ................................................................... 7, 25

*Gall v. United States*,
552 U.S. 38 (2007) ....................................................................... 36

*Gill v. Estelle*,
544 F.2d 1336 (5th Cir. 1977) (en banc), *overruled on other grounds
as recognized in Hogue v. Johnson*, 131 F.3d 466 (5th Cir. 1997) ......... 6, 25, 26

*Jacobs v. Nat'l Drug Intelligence Ctr.*,
548 F.3d 375 (5th Cir. 2008) ........................................................... 31

*Jennings v. Rodriguez*,
138 S. Ct. 830 (2018) ..................................................................... 50

*Kanter v. Barr*,
919 F.3d 437 (7th Cir. 2019) ........................................................... 45

*Molina-Martinez v. United States*,
578 U.S. 189 (2016) ..................................................................... 30

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
567 U.S. 519 (2012) ..................................................................... 52

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
597 U.S. 1 (2022) ................................................................... 7, 42, 43

*Rosales-Mireles v. United States*,
585 U.S. 129 (2018) ................................................................... 26, 27

*Scarborough v. United States,*
   431 U.S. 563 (1977) ................................................................ 50, 51

*Shepard v. United States,*
   544 U.S. 13 (2005) ....................................................................... 10

*Taylor v. United States,*
   495 U.S. 575 (1990) ...................................................................... 15

*Townsend v. Burke,*
   334 U.S. 736 (1948) ...................................................................... 26

*United States v. Alcantar,*
   733 F.3d 143 (5th Cir. 2013) ..................................................... 8, 51

*United States v. Andrews,*
   768 F. App'x 189 (5th Cir. 2019) (unpublished) (per curiam) ......................... 14

*United States v. Bailey,*
   115 F.3d 1222 (5th Cir. 1997) ................................................... 42, 49

*United States v. Bazemore,*
   608 F. App'x 207 (5th Cir. 2015) ............................................... 34, 39

*United States v. Becerril-Lopez,*
   541 F.3d 881 (9th Cir. 2008), *overruled by United States v.*
   *Bankston,* 901 F.3d 1100 (9th Cir. 2018) ........................................ 14

*United States v. Bernardez-Avila,*
   613 F. App'x 440 (5th Cir. 2015) (unpublished) ............................... 40

*United States v. Bonilla,*
   524 F.3d 647 (5th Cir. 2008) ....................................................... 31

*United States v. Booker,*
   644 F.3d 12 (1st Cir. 2011) ......................................................... 45

*United States v. Bowens,*
   907 F.3d 347 (5th Cir. 2018) ....................................................... 17

*United States v. Bravo,*
   No. 20-10008, 2021 WL 1561385 (5th Cir. Apr. 20,
   2021)(unpublished) .................................................................. 39

*United States v. Camp*,
   903 F.3d 594 (6th Cir. 2018)...................................................................... 17

*United States v. Cardenas*,
   598 F. App'x 264 (5th Cir. 2015) ............................................................... 34

*United States v. Castro-Alfonso*,
   841 F.3d 292 (5th Cir. 2016)................................................................. 28, 40

*United States v. Chappelle*,
   41 F.4th 102 (2d Cir. 2022)........................................................................ 16

*United States v. Connelly*,
   117 F.4th 269 (5th Cir. 2024).................................................................42, 43

*United States v. Contreras*,
   125 F.4th 725 (5th Cir. 2025)........................................................... 8, 44, 45

*United States v. Diaz*,
   116 F.4th 458 (5th Cir. 2024)...........................................................*passim*

*United States v. Dixon*,
   805 F.3d 1193 (9th Cir. 2015).........................................................*passim*

*United States v. Dominguez*,
   954 F.3d 1251 (9th Cir. 2020), *overruled on other grounds by United
   States v. Taylor*, 596 U.S. 845 (2022) ..................................................... 18

*United States v. Duhon*,
   541 F.3d 391 (5th Cir. 2008)...................................................................... 31

*United States v. Eason*,
   953 F.3d 1184 (11th Cir. 2020).................................................................. 17

*United States v. Feliciano*,
   498 F.3d 661 (7th Cir. 2007)...................................................................... 25

*United States v. Garcia*,
   647 Fed. Appx. 408 (5th Cir. 2016)(unpublished)..................................... 39

*United States v. Garcia-Lopez*,
   903 F.3d 887 (9th Cir. 2018)...................................................................... 12

*United States v. Garcia-Ortiz*,
   904 F.3d 102 (1st Cir. 2018) ..................................................................... 18

*United States v. Garrett*,
   24 F.4th 485 (5th Cir. 2022).................................................................. 11, 12

*United States v. Giglio*,
   126 F.4th 1039 (5th Cir. 2025).................................................... 8, 28, 45

*United States v. Gomez Gomez*,
   23 F.4th 575 (5th Cir. 2022)......................................................... 17, 18, 21

*United States v. Gray*,
   260 F.3d 1267 (11th Cir. 2001)................................................................ 18

*United States v. Green*,
   996 F.3d 176 (4th Cir. 2021).................................................................... 17

*United States v. Guzman-Rendon*,
   864 F.3d 409 (5th Cir. 2017)............................................................. 28, 31

*United States v. Hach*,
   162 F.3d 937 (7th Cir. 1998).................................................................... 25

*United States v. Hill*,
   63 F.4th 335 (5th Cir. 2023)..................................................... 5, 17, 21

*United States v. Hott*,
   866 F.3d 618 (5th Cir. 2017)............................................. 28, 39, 40, 41

*United States v. Houston*,
   364 F.3d 243 (5th Cir. 2004).................................................................... 10

*United States v. Ibarra-Luna*,
   628 F.3d 712 (5th Cir. 2010)..................................................... 7, 30, 31, 32

*United States v. Ivey*,
   60 F.4th 99 (4th Cir. 2023)...................................................................... 18

*United States v. Jackson*,
   30 F.4th 269 (5th Cir. 2022)..................................................................... 11

*United States v. Katalinich*,
   113 F.3d 1475 (7th Cir. 1997)................................................................. 25

*United States v. Kelley*,
   40 F.4th 276 (5th Cir. 2022)..................................................................... 27

*United States v. Kimble*,
  142 F.4th 308 (5th Cir. 2025)..........................................................46, 47, 48

*United States v. Kinzy*,
  No. 22-30169, 2023 WL 4763336 (5th Cir. July 26, 2023) *as revised*
  (Aug. 24, 2023), *cert. denied* 144 S. Ct. 2682 (2024)........................................40

*United States v. Kuban*,
  94 F.3d 971 (5th Cir. 1996)..................................................................52

*United States v. Leal-Rax*,
  594 F. App'x 844 (5th Cir. 2014) ..........................................................34

*United States v. Leontaritis*,
  977 F.3d 447 (5th Cir. 2020)..............................................................28

*United States v. Lopez*,
  514 U.S. 549 (1995) ...................................................................50, 51

*United States v. Martinez-Romero*,
  817 F.3d 917 (5th Cir. 2016)..........................................................32, 33

*United States v. Medel-Guadalupe*,
  987 F.3d 424 (5th Cir. 2021)..............................................................28

*United States v. Montgomery*,
  634 F. App'x 127 (5th Cir. 2015)(unpublished)..............................................39

*United States v. Nanda*,
  867 F.3d 522 (5th Cir. 2017)..............................................................28

*United States v. Nino-Carreon*,
  910 F.3d 194 (5th Cir. 2018)..............................................................28

*United States v. O'Connor*,
  874 F.3d 1147 (10th Cir. 2017)............................................................17

*United States v. Olano*,
  507 U.S. 725 (1993) ...................................................................23, 26

*United States v. Parra*,
  111 F. 4th 651 (5th Cir. 2024)............................................................37

*United States v. Pillault*,
  783 F.3 282, 292..........................................................................40

*United States v. Prigan*,
    8 F.4th 1115 (9th Cir. 2021)..................................................................... 16

*United States v. Quintanilla*,
    114 F.4th 453 (5th Cir. 2024)............................................................... 9, 23

*United States v. Rahimi*,
    602 U.S. 144 (2024) ................................................. 42, 43, 46, 47

*United States v. Rawls*,
    85 F.3d 240 (5th Cir. 1996)................................................................ 50, 51

*United States v. Redmond*,
    965 F.3d 416 (5th Cir. 2020)........................................................... 28, 34, 35

*United States v. Reyna-Aragon*,
    992 F.3d 381 (5th Cir. 2021)................................................................ 28, 32

*United States v. Richardson*,
    676 F.3d 491 (5th Cir. 2012)........................................................... 28, 31, 32

*United States. v. Rico*,
    864 F.3d 381 (5th Cir. 2017)..................................................................... 28

*United States v. Rico-Mejia*,
    859 F.3d 318 (5th Cir. 2017), *overruled on other grounds by United
    States v. Reyes-Contreras*, 910 F.3d 169 (5th Cir. 2018), *overruled
    on other grounds by Borden*, 593 U.S. 420
    ........................................................................... 31, 32, 33, 34

*United States v. Ritchey*,
    117 F. 4th 762 (5th Cir. 2024)................................................................... 29

*United States v. Rivera-Bugarin*,
    626 F. App'x 632 (7th Cir. 2015) (unpublished) ............................................. 25

*United States v. Santiesteban-Hernandez*,
    469 F.3d 376 (5th Cir. 2006)........................................................... 13, 14, 15

*United States v. Schnur*,
    132 F. 4th 863 (5th Cir. 2025)............................................................. 48, 49

*United States v. Scott*,
    14 F.4th 190 (3d Cir. 2021)....................................................................... 16

*United States v. Sealed Appellant*,
   No. 24-30570, 2025 WL 1924524 (5th Cir. Jul. 14, 2025)
   (unpublished) ................................................................................... 41

*United States v. Seals*,
   419 F.3d 600 (7th Cir. 2005) ........................................................... 25

*United States v. Seekins*,
   52 F.4th 988 (5th Cir. 2022) ...................................................... 51, 52

*United States v. Shakbazyan*,
   841 F.3d 286 (5th Cir. 2016) ........................................................... 40

*United States v. Stoglin*,
   34 F.4th 415 (5th Cir. 2022) ........................................................... 27

*United States v. Stoker*,
   706 F.3d 643 (5th Cir. 2013) ........................................................... 10

*United States v. Tanksley*,
   848 F.3d 347 (5th Cir.) .............................................. 29, 34, 36, 39

*United States v. Tellez-Martinez*,
   517 F.3d 813 (5th Cir. 2008) ........................................................... 13

*United States v. Vasquez-Tovar*,
   420 F. App'x 383 (5th Cir. 2011) ................................................... 34

*United States v. Vega-Garcia*,
   893 F.3d 326 (5th Cir. 2018) ........................................................... 28

*United States v. Villarreal-Garcia*,
   761 F. App'x 425 (5th Cir. 2019) (unpublished) ............................. 27

*United States v. Walters*,
   No. 22-50774, 2024 WL 512555 (5th Cir. Feb. 9, 2024) ................. 35

*United States v. Wheeler*,
   No. 19-11022, 2022 WL 17729412 (5th Cir. Dec. 16, 2022)
   (unpublished) ................................................................................... 11

*United States v. Wickware*,
   143 F.4th 670 (5th Cir. 2025) (per curiam) ...................... 5, 15, 21, 22

*United States v. Ybarra*,
  No. 20-10520, 2021 WL 3276471 (5th Cir. July 30, 2021) .............................. 11

**State Cases**

*People v. Anderson*,
  252 P.3d 968 (Cal. 2011) ................................................................*passim*

**Federal Statutes**

18 U.S.C. § 16(a) ............................................................................ 18

18 U.S.C. § 922(g)(1) ...............................................................*passim*

18 U.S.C. § 922(g)(8)(C)(i) ......................................................... 47

18 U.S.C. § 924(c)(3)(A)............................................................*passim*

18 U.S.C. § 924(e)(2)(B)(i) ........................................................ 11

18 U.S.C. § 1951(a), (b)(1) ......................................................... 16

18 U.S.C. § 1951(b)(1) .......................................................... 16, 17

18 U.S.C. § 3231 ............................................................................. 1

18 U.S.C. § 3553 .......................................................................*passim*

18 U.S.C. § 3553(a)................................................................... 27, 35

18 U.S.C. § 3742(a) ........................................................................ 1

28 U.S.C. § 1291 ............................................................................. 1

**United States Sentencing Guidelines**

U.S.S.G. 2K2.1(a)(4)(A) ............................................................... 30

U.S.S.G. Ch. 5, pt. A ..................................................................... 30

U.S.S.G. § 2K2.1(a)(4)(A) ............................................................ 30

U.S.S.G. § 2L1.2 ....................................................................... 13, 14

U.S.S.G. § 4A1.1(b) ...................................................................... 23

U.S.S.G. § 4B1.2 ......................................................................*passim*

U.S.S.G. § 4B1.2(a) ............................................................................ 9

U.S.S.G. § 4B1.2(a)(1) ...................................................................... 12

U.S.S.G. § 4B1.2(a)(2) ...................................................................... 13

U.S.S.G. § 4B1.2(e)(3) ................................................................*passim*

**State Statutes**

Cal. Penal Code § 211 .............................................................. 10, 12, 13

Cal. Penal Code § 212 ...................................................................... 11

**Rules**

FED. R. APP. P. 4(b)(1)(A)(i) ............................................................. 1

**Constitutional Provisions**

U.S. Const. amend. II ................................................................*passim*

U.S. Const. amend. VI .................................................................. 6, 25

U.S. Const. art. I, § 8 cl. 3 ................................................................ 50

**Other Authorities**

Adam Winkler, *Heller's Catch-22*, 56 UCLA L. Rev. 1551, 1563 & n.
    67 (2009) ................................................................................. 45

Brief for the Petitioner, *United States v. Rahimi*, 602 U.S. 680 (2024)
    (No. 22-915) .................................................................. 46, 47, 48

Joseph G.S. Greenlee, *The Historical Justification for Prohibiting
    Dangerous Persons from Possessing Arms*, 20 Wyo. L. Rev. 249,
    272-75 (2020) ........................................................................... 45

Letter from U.S. Dep't of Justice to The Hon. Carlton W. Reeves, Chair,
    U.S. Sent'g Comm'n, at 10 (Feb. 3, 2025) ......................................... 18

U.S. Sent'g Comm'n Guidelines Manual § 4B1.2(a)(2), (e)(3) (Nov. 1,
    2023) ................................................................................. 16, 19

**Jurisdictional Statement**

The district court had jurisdiction over this matter pursuant to 18 U.S.C. § 3231. This Court has appellate jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

The district court entered its written judgment on February 24, 2025. ROA.76-79. Appellant filed a timely notice of appeal on the same day. ROA.82. *See* FED. R. APP. P. 4(b)(1)(A)(i).

## Issues Presented for Review

Appellant presents five principal issues for this Court's review.

*First*, whether California robbery—which does not require the intentional use of force against the victim—qualifies under the 2023 Guidelines definition of "robbery"?

*Second*, whether the district court plainly erred by assessing two criminal history points based on a prior sentence that was imposed in the absence of counsel?

*Third*, whether this Court should credit a Guidelines disclaimer that appears only in the Statement of Reasons and is not supported by the record at sentencing?

*Fourth*, whether 18 U.S.C. § 922(g)(1) as-applied to Appellant comports with the Second Amendment?

*Fifth*, whether § 922(g)(1) requires more than the mere fact of interstate travel, and if not, whether the statute exceeds Congress's authority under the Commerce Clause?

**Statement of the Case**

The grand jury returned a one-count indictment charging Appellant with violating 18 U.S.C. § 922(g)(1). ROA.8-10.

Appellant filed a motion to dismiss the indictment, arguing: (1) that the "possession" prong of § 922(g)(1) exceeds Congress's power under the Commerce Clause; and (2) § 922(g)(1) is unconstitutional under the Second Amendment, facially and as-applied. ROA.39-54. The district court denied his motion. ROA.5.

Appellant pled guilty to the indictment without a plea agreement. ROA.57. He consented to proceed before a magistrate judge. ROA.58. At rearraignment, the magistrate advised Appellant that § 922(g)(1) required the government to prove *inter alia* that Appellant knowingly possessed a firearm, and that "the possession of the charged firearm affected interstate or foreign commerce, that is, before the defendant possessed the charged firearms, it/they had traveled at some time from one state to another or between any part of the United States and any other country." ROA.123.

The district judge accepted Appellant's guilty plea. ROA.5.

Appellant objected to the PSR's characterization of his California robbery conviction as a "crime of violence" and his California cocaine conviction as a "controlled substance offense." ROA.216-226.[1] He noted that if the court sustained both

---

[1] Appellant is not now challenging whether his cocaine conviction is a "controlled substance offense."

objections, his Guidelines range would be 37-46 months; if it sustained one objection, his Guidelines range would be 51-63 months. ROA.224. He reiterated both objections in response to the PSR Addendum. ROA.235-259.

At sentencing, the court overruled both objections. ROA.164. It adopted the PSR's guideline calculation as follows: Total Offense Level of 21, Criminal History Category VI, and an imprisonment range of 77 to 96 months. ROA.164.

The court sentenced Appellant to 77 months imprisonment. ROA.171. Three days later, it filed a Statement of Reasons form stating: "Even if the guideline calculations are not correct, this is the sentence the Court would otherwise impose under 18 U.S.C. § 3553." ROA.263.

**Summary of the Argument**

Appellant raises five principal arguments.

*First*, the district court erred by characterizing Appellant's conviction for California robbery as a crime of violence under the Guidelines. Although this Court's precedent has held as much, those cases no longer control because they were decided before November 1, 2023, when the Sentencing Commission provided a new definition for "robbery." *See United States v. Wickware*, 143 F.4th 670, 673–74 (5th Cir. 2025) (per curiam) (recognizing the 2023 Amendment defining "robbery" as an "intervening" Guidelines amendment that renders prior precedent no longer controlling).

As the Commission recognized, the new "robbery" definition is distinct from "generic robbery" because it incorporates the Hobbs Act's requirement of intentional use of force. This Court has repeatedly held that Hobbs Act robbery is a "crime of violence" under the elements clause of 18 U.S.C. § 924(c)(3)(A), which provides that an offense is a crime of violence if it "has as an element the use, attempted use, or threatened use of physical force against another." *See, e.g.*, *United States v. Hill*, 63 F.4th 335, 363 (5th Cir. 2023). By contrast, offenses committed recklessly *do not* satisfy the elements clause. *See, e.g*, *Borden v. United States*, 593 U.S. 420 (2021) (plurality op.) So Hobbs Act robbery—and by extension, the identically worded "robbery" offense in the Guidelines—satisfies the elements clause of     §

5

924(c)(3)(A), and cannot be committed recklessly. Both require an intentional use of force.

And because robbery in U.S.S.G. § 4B1.2(e)(3) mirrors the definition of Hobbs Act robbery, it excludes any offense that does not involve an intentional use of force—such as California robbery. In *People v. Anderson*, the California Supreme Court upheld a California robbery conviction where the defendant used force against the victim "only accidentally or negligently, rather than intentionally." *United States v. Dixon*, 805 F.3d 1193, 1197 (9th Cir. 2015) (citing *Anderson*, 252 P.3d 968, 971–72 (Cal. 2011)). Because it lacks the requisite mens rea for "robbery" under the Guidelines, California robbery does not qualify as a crime of violence.

***Second***, the district court plainly erred by adding two criminal history points based on Appellant's drug conviction and sentence described in PSR paragraph 32, which was obtained in violation of his Sixth Amendment rights. The PSR indicates that "attorney representation is unknown." ROA.197. Appellant moved to supplement the record with the certified docket for this conviction, which indicates that he was sentenced to 364 days imprisonment at a probation revocation proceeding where he was unrepresented. *See* Opposed Mot. to Supp., ECF No. 34. Enhancing his sentence based on this conviction constitutes plain error. *See Gill v. Estelle*, 544 F.2d 1336, 1337 (5th Cir. 1977) (en banc), *overruled on other grounds as recognized in Hogue v. Johnson*, 131 F.3d 466, 468 n. 40 (5th Cir. 1997) (counsel is required at a

6

revocation proceeding where a sentence of imprisonment is imposed); *Custis v. United States*, 511 U.S. 485, 494–96 (1994) (an uncounseled conviction cannot be used enhance the punishment of a later offense).

**Third,** the error cannot be disregarded as not having occasioned prejudice. The combined effect of the two Guidelines errors produced an erroneous range of 77 to 96 months, and clearly influenced the sentence of 77 months. The district court never considered the correct range of 46 to 57 months, so the more demanding harmlessness standard of United States v. Ibarra-Luna, 628 F.3d 712 (5th Cir. 2010) applies. The error cannot be disregarded because the sentence of 77 months coincides with the low end of the incorrect range, and the court did not make *any* statements at sentencing suggesting that it had this sentence in mind. The government will likely point to language in the Statement of Reasons: "Even if the guideline calculations are not correct, this is the sentence the Court would otherwise impose under 18 U.S.C. § 3553." ROA.263. Given its ubiquity, this language—which routinely appears in the Statement of Reasons for cases sentenced by this particular district court—should not be treated as "magic words" that insulate its sentences from appellate review.

**Fourth**, under the rule of *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), § 922(g)(1) is unconstitutional as-applied to Appellant. This Court, however, has held that § 922(g)(1) did not violate the Second Amendment as-

applied to defendants who were on probation because "we have a history and tradition of punishing felons quite harshly, including taking away their weapons while they complete their sentence[.]" *United States v. Contreras*, 125 F.4th 725, 732–33 (5th Cir. 2025); *United States v. Giglio*, 126 F.4th 1039, 1044 (5th Cir. 2025). These cases foreclose Appellant's as-applied challenge, because he was on probation at the time of the instant offense. ROA.198, 200. He submits for further review that these cases were wrongly decided. By making a defendant's supervised release or probationary status the deciding factor triggering the prohibition on firearm possession, these decisions disregard the clear framework set forth in *United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024), for evaluating an as-applied challenge to § 922(g)(1).

***Fifth***, Appellant stipulated to insufficient facts to establish that he possessed the firearm in or affecting commerce under a properly-interpreted § 922(g)(1). Even if the prevailing interpretation of § 922(g)(1) is correct, Congress has no power to enact such legislation. This Court has also denied this claim, *see, e.g., United States v. Alcantar*, 733 F.3d 143, 145–46 (5th Cir. 2013), so he raises it for preservation purposes.

## Argument

**I.    The district court made two errors in calculating the Guidelines range, neither of which can be dismissed as without prejudice.**

    **A.    The district court erred by characterizing California robbery as a "crime of violence" under the Guidelines.**

        **1. *De novo* review applies.**

The Court reviews legal conclusions or interpretations of the Sentencing Guidelines *de novo*. *United States v. Quintanilla*, 114 F.4th 453, 475 (5th Cir. 2024) (citation omitted).

        **2. California robbery is not a "crime of violence" under § 4B1.2(a).**

U.S.S.G. § 4B1.2(a) states that a "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

    (1) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

    (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm . . .

U.S.S.G. § 4B1.2(a).

Thus, an offense may be a "crime of violence" under § 4B1.2 because it either: a) has force (including attempted and threatened force) as an element, or b) is one of the "enumerated offenses," among them "robbery." In determining whether a prior

offense qualifies as a "crime of violence," the sentencing court examines the match between its elements and the definition found in § 4B1.2. *See United States v. Stoker*, 706 F.3d 643, 648, n.4 (5th Cir. 2013); *Shepard v. United States*, 544 U.S. 13, 20–26 (2005). If the prior statute of conviction criminalizes conduct outside the definition found in § 4B1.2, the offense is non-qualifying. *See United States v. Houston*, 364 F.3d 243, 246 (5th Cir. 2004) ("If an indictment is silent as to the offender's actual conduct, we must proceed under the assumption that his conduct constituted the least culpable act satisfying the count of conviction"); *see also Borden v. United States*, 593 U.S. 420, 424 (2021) (plurality op.) ("If any—even the least culpable—of the acts criminalized do not entail that kind of force, the statute of conviction does not categorically match the federal standard, and so cannot serve as an [Armed Career Criminal Act] ACCA predicate.").

In 2007, Appellant pled guilty to two counts of California robbery, in violation of § 211 of the California Penal Code. ROA.196. That statute defines "robbery" as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." Cal. Penal Code § 211. The term "fear" as used in § 211 is defined as either "[t]he fear of unlawful injury to the person or property of the person robbed, or of any relative of his or member of his family," or "[t]he fear of an immediate and unlawful injury to the person or property of anyone in the company of the person

10

robbed at the time of the robbery." Cal. Penal Code § 212. California robbery is indivisible. *United State v. Dixon*, 805 F.3d 1193, 1198 (9th Cir. 2015).

### 3. California robbery is not a crime of violence under the force prong, because it can be committed negligently.

In the Armed Career Criminal Act (ACCA) context, the Supreme Court has recognized that "the use, attempted use, or threatened use of physical force against the person of another" requires the intentional use of force, and cannot be committed recklessly. *See Borden*, 593 U.S. at 423. And this Court has held repeatedly that Texas robbery by injury—which may be committed by recklessly inflicting injury in the course of a theft—does not qualify under ACCA's force clause definition of "violent felony" in 18 U.S.C. § 924(e)(2)(B)(i). *See United States v. Garrett*, 24 F.4th 485, 488–89 (5th Cir. 2022) ("If the statute is indivisible and thus only states one crime, Garrett's conviction does not qualify under *Borden* as an ACCA violent felony because robbery can be committed recklessly."); *United States v. Wheeler*, No. 19-11022, 2022 WL 17729412, at **1–2 (5th Cir. Dec. 16, 2022) (unpublished) ("Because an individual may be convicted under the Texas robbery statute without acting with purpose or knowledge, [], we agree that a conviction under the Texas robbery statute would not per se qualify as a violent felony for ACCA purposes."); *United States v. Jackson*, 30 F.4th 269, 274–75 (5th Cir. 2022) (recognizing the insufficient mens rea of injury-robbery and that analysis is dependent on whether Texas statute is indivisible); *United States v. Ybarra*, No. 20-10520, 2021 WL

11

3276471, at *1 (5th Cir. July 30, 2021) (While *Borden* does not affect paragraph (a)(2) of that section, the record makes clear that Ybarra was convicted under paragraph (a)(1). That provision criminalizes the reckless use of force, so it does not satisfy ACCA's elements clause after *Borden*.")

In *People v. Anderson*, the California Supreme Court upheld a California robbery conviction in which the defendant used force "only accidentally or negligently, rather than intentionally." *Dixon*, 805 F.3d at 1197 (citing *Anderson*, 252 P.3d at 971–72). Because it can be committed with a *mens rea* that falls short of the intentional use of force needed to commit "the use, attempted use, or threatened use of physical force against the person of another," California robbery does not qualify as a crime of violence under the force clause of U.S.S.G. § 4B1.2(a)(1). *See id.* at 1194-97 (California robbery does not qualify under ACCA's force clause because it can be committed accidentally or negligently); *United States v. Garcia-Lopez*, 903 F.3d 887, 892–93 (9th Cir. 2018) (same); *Garrett*, 24 F.4th at 488–89 (Texas robbery does not qualify under ACCA's force clause because it can be committed recklessly).

> **4. This Court's precedent deeming California robbery a crime of violence predates the 2023 Guidelines Amendment and is no longer binding.**

In *Tellez-Martinez*, this Court held that California Penal Code § 211 categorically "falls within the generic or contemporary meaning of robbery as understood by

12

this court. " 517 F.3d 813, 815 (5th Cir. 2008). That decision relied on *Santiesteban-Hernandez*, which held that Texas robbery is a crime of violence under USSG § 2L1.2. *Id.* (citing *United States v. Santiesteban-Hernandez*, 469 F.3d 376, 379–80 (5th Cir. 2006)). At the time, neither the text nor commentary to § 4B1.2 defined the term "robbery." But that changed on November 1, 2023, when Amendment 822 to the Sentencing Guidelines provided a definition to "robbery," as listed in U.S.S.G. § 4B1.2(a)(2), overruling this Court's decision in *Santiesteban-Hernandez*.

In *Tellez-Martinez*, the defendant argued that § 211 "does not meet the generic, contemporary definition of robbery because the California statute may be violated not only by the use of force by also by threats to property." *Id.* at 814. This Court rejected that argument, relying on *Santiesteban-Hernandez*, which held that Texas robbery is a crime of violence under USSG § 2L1.2. *Id.* at 815 (citing *Santiesteban-Hernandez*, 469 F.3d at 379-80). It recounted its conclusion from *Santiesteban-Hernandez* that "the generic form of robbery may be thought of as aggravated larceny, containing at least the elements of misappropriation of property under circumstances involving [immediate] danger to the person." *Id.* (quoting *Santiesteban-Hernandez*, 469 F.3d at 380) (cleaned up). "It is this immediate danger element [that] makes robbery deserving of greater punishment than that provided for larceny and extortion . . . [s]uch danger is inherently present when property is taken by force or putting in fear." *Id.* (quoting *Santiesteban-Hernandez*, 469 F.3d at 380–81) (cleaned up). The

13

Court rejected Tellez's argument that the California statute is overbroad by criminalizing threats to property because it defines robbery "as a crime committed (1) directly against the victim or in his presence; and (2) against his will." *Id*. "Like the Texas statute at issue in *Santiesteban-Hernandez*, the California robbery statute involves the misappropriation of property under circumstances involving danger to the person[,]" so "[r]egardless of how the robbery occurs, that danger is inherent in the criminal act." *Id.* "Thus, even when the statute is violated by placing the victim in fear of injury to property, the property has been misappropriated in circumstances involving [immediate] danger to the person." *Id.* (citation omitted; cleaned up); *see also United States v. Andrews*, 768 F. App'x 189, 192 (5th Cir. 2019) (unpublished) (per curiam) (noting that "the Fifth Circuit's prior determination that California robbery constitutes a crime of violence . . . turns solely on a comparison of the California statute with the generic definition of robbery.")[2]

---

[2]     The Ninth Circuit adopted the same generic definition of robbery as adopted by the Fifth Circuit in *Santiesteban-Hernandez*, but disagreed that it encompassed threats to property. *See United States v. Becerril-Lopez*, 541 F.3d 881, 891 (9th Cir. 2008), *overruled by United States v. Bankston*, 901 F.3d 1100 (9th Cir. 2018). Following the 2016 Guidelines Amendments—which excluded California robbery from the Guidelines definition of "extortion,"—the Ninth Circuit held that California robbery is not a crime of violence under the Guidelines. *Bankston*, 901 F.3d at 1104. Appellant submits—in the alternative, and for further review—that for the reasons recognized in *Becerril-Lopez* and *Bankston*, *Tellez-Martinez* incorrectly concluded that the generic definition of robbery included threats to property.

14

Therefore, *Tellez-Martinez* is no longer binding, because it relied on *Santi-esteban-Hernandez*, which applied a "generic" definition of robbery. *See Santi-esteban-Hernandez*, 469 F.3d at 378–79. "Generic" definitions are created for enumerated offenses, it explained, when the relevant Guideline (or other provision) leaves the offense undefined. *Id.* "Because the enhancement provision does not define the predicate offense of 'robbery,' we must first find its 'generic, contemporary meaning . . . '" *Id.* at 378 (quoting *Taylor v. United States*, 495 U.S. 575, 598 (1990)). *Santiesteban-Hernandez* broadly defined "generic robbery" as "'misappropriation of property under circumstances involving [immediate] danger to the person.'" *Id.* at 380 (citation omitted). As noted earlier, it was this "immediate danger" aspect of the generic definition that led the Court in *Tellez-Martinez* to hold that California robbery qualified as a "crime of violence."

On November 1, 2023, the Sentencing Commission adopted an explicit and different definition of "robbery" for the purposes of § 4B1.2. As this Court recognized, *Santiesteban-Hernandez* no longer controls "due to the intervening amendment of the Guidelines." *Wickware*, 143 F.4th at 674. The Guideline now says:

> "Robbery" is the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining. The phrase 'actual or threatened force' refers to force that is sufficient to overcome a victim's resistance.

15

USSG § 4B1.2(e)(3). As the Commission recognized, the new definition is distinct from "generic robbery" because it incorporates Hobbs Act robbery, which many Courts of Appeals had deemed broader than "generic robbery" found in the Guidelines. And importantly, this new definition incorporates the Hobbs Act's requirement of intentional use of force against a person not found in the California statute.

**5. The new Guidelines definition of "robbery"—which was modeled after and is identical to Hobbs Act robbery—requires the intentional use of force.**

In creating the new "robbery" definition, the Commission imported the definition for Hobbs Act robbery. *See* 18 U.S.C. § 1951(a), (b)(1). The "robbery" definition in the Guidelines tracks the definition in the Hobbs Act statute. *Compare* U.S. Sentencing Comm'n, Guidelines Manual § 4B1.2(a)(2), (e)(3) (Nov. 1, 2023), *with* 18 U.S.C. § 1951(b)(1). That was by design. The Commission explained that after the 2016 Guidelines amendment, "every Court of Appeals addressing the issue under the guidelines has held that Hobbs Act robbery is not a 'crime of violence' under §4B1.2[.]" U.S. Sentencing Comm'n, Supplement to Appendix C at 247 (Nov. 1, 2023). This is because Hobbs Act robbery—which criminalizes threats against property—was broader than "generic robbery" and the "guidelines definition of extortion[,]" neither of which encompassed threats to property. *Id.* (citing 18 U.S.C. § 1951(b)(1); *United States v. Chappelle*, 41 F.4th 102 (2d Cir. 2022); *United States v. Scott*, 14 F.4th 190 (3d Cir. 2021); *United States v. Prigan*, 8 F.4th 1115 (9th Cir.

2021); *United States v. Green*, 996 F.3d 176 (4th Cir. 2021); *Bridges v. United States*, 991 F.3d 793 (7th Cir. 2021); *United States v. Eason*, 953 F.3d 1184 (11th Cir. 2020); *United States v. Camp*, 903 F.3d 594 (6th Cir. 2018); *United States v. O'Connor*, 874 F.3d 1147 (10th Cir. 2017)).

In other words, the Commission adopted Amendment 822 to ensure that going forward, a Hobbs Act robbery conviction would qualify as a conviction for a "crime of violence" under § 4B1.2. *Id.* The Hobbs Act and now the Guidelines define "robbery" to require a taking "by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property . . ." *See* 18 U.S.C. § 1951(b)(1); U.S.S.G. § 4B1.2(e)(3).

It follows that because the "robbery" definition in § 4B1.2(e)(3) now mirrors Hobbs Act robbery, it requires an intentional use of force. This Court has repeatedly held that Hobbs Act robbery is a "crime of violence" under the elements clause of § 924(c)(3)(A), which provides that an offense is a crime of violence if it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." *See United States v. Hill*, 63 F.4th 335, 363 (5th Cir. 2023) (Hobbs Act robbery is a crime of violence under the elements clause of § 924(c)(3)(A)); *United States v. Bowens*, 907 F.3d 347, 353 (5th Cir. 2018). Precedent also recognizes that offenses committed recklessly *do not* satisfy the elements clause. *See Borden*, 593 U.S. at 423; *United States v. Gomez Gomez*, 23 F.4th 575,

17

577 (5th Cir. 2022) (cleaned up).[3] Therefore, Hobbs Act robbery—and by extension, the identically worded "robbery" offense in § 4B1.2(e)(3)—satisfy the elements clause of § 924(c)(3)(A), and cannot be committed recklessly. Both require an intentional use of force.

That conclusion is consistent with the law in the First, Fourth, Ninth and Eleventh Circuits, which have recognized that, "Hobbs Act robbery cannot be committed recklessly but instead requires intentional conduct." *See United States v. Ivey*, 60 F.4th 99, 117 (4th Cir. 2023) (citing *United States v. Dominguez*, 954 F.3d 1251, 1261 (9th Cir. 2020), *overruled on other grounds by United States v. Taylor*, 596 U.S. 845 (2022); *United States v. Garcia-Ortiz*, 904 F.3d 102, 108-09 (1st Cir. 2018); *United States v. Gray*, 260 F.3d 1267, 1283 (11th Cir. 2001)).

Even the Department of Justice agrees that the "current definition" from § 4B1.2, "like that in the Hobbs Act, requires intentional conduct." Letter from U.S. Dep't of Justice to The Hon. Carlton W. Reeves, Chair, U.S. Sent'g Comm'n, at 10 (Feb. 3, 2025).[4] The amendment adopting that definition, the Department continued, "had the unintended consequence of likely eliminating as crimes of violence numerous state robbery statutes that previously qualified, on the grounds that those statutes

---

[3]   *Gomez Gomez* discussed the elements clause of 18 U.S.C. § 16(a), but the language is identical to the elements clause of § 924(c)(3)(A).

[4]   A digital copy of the letter is available at the Sentencing Commission's website: https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20250212/DOJ.pdf.

allow conviction based on reckless conduct." *Id*. The Department recommended that the Commission adopt an *additional* amendment "to make clear that a robbery offense committed with the reckless use of force also qualifies" as a crime of violence under § 4B1.2. *Id*. at 11.

In sum, the new Guidelines definition of "robbery" incorporates the definition of Hobbs Act robbery. Because Hobbs Act robbery satisfies the elements clause of § 924(c)(3)(A)—and therefore requires an intentional use of force—so too does "robbery" under the Guidelines.

**6. Because California robbery can be committed by accidentally or negligently using force, it lacks the "intentional" mens rea required by the Guidelines definition.**

Because the enumerated definition of robbery in § 4B1.2(e)(3) now mirrors the definition of Hobbs Act robbery, it excludes any offense that does not involve an intentional use of force. As mentioned above, California robbery does not meet this criterion due to the fact that it can be committed by accidentally or negligently using force.

In *Anderson*, the California Supreme Court upheld a California robbery conviction where the defendant used force against the victim "only accidentally or negligently, rather than intentionally." *Dixon*, 805 F.3d at 1197 (citing *Anderson*, 252 P.3d at 971–72). In that case, the defendant broke into an unoccupied car in a parking garage, but was unable to leave the garage because the gate was closed. *Anderson*,

19

252 P.3d at 970. "After the gate opened, Anderson sped out of the garage in the stolen car, running over the car's owner in the process." *Dixon*, 805 F.3d at 1197 (citing *Anderson*, 252 P.3d at 970–71).

Anderson "did not deny hitting her, but claimed it was an accident." *Anderson*, 252 P.3d at 971. After seeing "the gate to the complex open to admit a car[,]" he waited for the car to pass, and then "drove toward the gate, which began to close." *Id.* "He drove quickly around the gate, estimating his speed at 25-30 miles per hour." *Id.* He was not aware that the car's owner was in his path "until he looked up and saw [her] standing just outside the gate, approximately 10-12 feet from him, with her hand up." *Id.* In order to avoid her, he "swerved, explaining he did not think he could stop in time." *Id.* Anderson "maintained he had not intended to run over, injure, or frighten anyone." *Id.* "He had been thinking about getting away and had not contemplated the possibility that someone might be on the other side of the gate." *Id.*

The California Supreme Court held that Anderson had committed robbery "even if, as he claims, he did not intend to strike [the victim], but did so accidentally." *Id.* at 972. It explained that "the intent element of robbery does not include an intent to apply force against the victim or to cause the victim to feel fear." *Id.* at 970. Thus, in California, "[i]t is robbery if the defendant committed a forcible act against the victim motivated by the intent to steal, even if the defendant did not also intend for the victim to experience force or fear." *Id.*

20

Hobbs Act robbery, on the other hand, "is a crime of violence under the elements clause" of § 924(c)(3)(A), *Hill*, 63 F.4th at 363—***which by definition*** requires "as an element the use, attempted use, or threatened use of physical force against the person or property of *another*." 18 U.S.C. § 924(c)(3)(A)(emphasis added). After *Borden*, this Court further clarified that the elements clause requires the *intentional* "use . . . of physical force against the person or property of another[,]" because it "does not include offenses with a *mens rea* of recklessness." *Gomez Gomez*, 23 F.4th at 577 (cleaned up). It follows that because Guidelines definition incorporated Hobbs Act robbery—which requires the intentional use of physical force against "the person . . . of another," and California robbery "does not include an intent to apply force against the victim[,]" *Anderson*, 252 P.3d at 970—California robbery is broader than "robbery" under the new Guidelines definition.

While this Court in *Wickware* recently rejected a challenge to the treatment of Texas robbery as a crime of violence under the Guidelines, that holding should have no impact on this case because *Wickware* concerned a different statute and the Court explicitly declined to consider whether the definition of robbery in the Guidelines encompasses offenses that can be committed recklessly. *See Wickware*, 143 F.4th at 674, n. 2; 675. Wickware argued that Texas robbery was broader than the Guidelines definition because "the addition of the phrase 'by means of actual or threatened

21

force, or violence, or fear of injury' requires a 'causal connection' between the defendant's assaultive conduct and the unlawful taking; the property must be taken from the person *through* actual or threatened force." *Id.* at 674 (emphasis in original). By contrast, according to Wickware, Texas robbery "simply requires harm to another *in the course of* committing theft[.]" *Id.* (cleaned up) (emphasis in original). "For us to agree with Wickware," said the Court, "we must find that 'in the course of' and 'by means of' are substantially dissimilar." *Id.* It declined to do so, because "both phrases require the use of force preceding, during, or throughout the theft. And since minor variances in terminology should not distract us from the substance of the text, we do not find this difference compelling." *Id.* (cleaned up).

The Court noted that the definition of robbery in the Guidelines "does not specify a mens rea" and that in the petition for rehearing that was granted, "Wickware asserts that the definition of robbery in the Guidelines tracks the Hobbs Act, which excludes reckless conduct." *Id.* at 674, n.2. However, it declined to "address whether the Guidelines' definition of robbery includes a narrower mens rea than the Texas Penal Code requires," because Wickware had "forfeited this argument." *Id.* (citations omitted). The *Wickware* decision, therefore, was based on a different argument regarding a different statute and should have no bearing on the outcome here.

22

As discussed in Section I(C), the error had a clear impact on Appellant's sentence which is tied to the low-end of the erroneous Guidelines range, and should not be disregarded as harmless.

**B. The district court plainly erred by counting two criminal history points based on a conviction where Appellant was sentenced to 364 days imprisonment without the benefit of counsel.**

**1. Plain error review applies.**

The Court reviews legal conclusions or interpretations of the Sentencing Guidelines *de novo*. *Quintanilla*, 114 F.4th at 475 (citation omitted). Because Appellant did not preserve this issue below, review is for plain error. This Court may reverse plain error when it finds: (1) error, (2) that is clear or obvious, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 732 (1993).

**2. The certified docket establishes that Appellant was not represented by counsel when the state court imposed a sentence of incarceration at a revocation proceeding.**

The district court plainly erred by adding two criminal history points based on Appellant's California drug conviction described in PSR paragraph 32. It indicates that Appellant was arrested for this offense on March 28, 2013, and was convicted on June 7, 2018 and sentenced to 364 days imprisonment. ROA.197. He received 2 criminal history points for this conviction. ROA.197 (citing U.S.S.G. § 4A1.1(b)).

The PSR further indicates that "[a]ttorney representation is unknown; however, according to California State Law, individuals accused of any felony must have legal representation or intelligently waive such right to the Court's satisfaction." ROA.197. The case number was "LC VA 12944601" and the case arose out of Los Angeles County Superior Court in Bellflower, California. ROA.197.

On July 1, 2025, Appellant received a certified docket for Case Number "VA 129446-01" from Los Angeles County Superior Court. *See* Mot. to Supplement, Exhibit A, ECF No. 34-2, at 2. The cover page is signed by the Deputy Clerk, who indicates that he is "unable to provide . . . a copy of the case information/case number. The case information requested has been purged and/or destroyed pursuant to Court order." *Id.* The enclosed docket indicates the following information:

1. Appellant was arraigned on March 29, 2013. He was charged with three counts, and appointed a public defender. *Id.* at 4. Appellant pled guilty to Count 1, which was reduced to a misdemeanor. *Id.* at 6.

2. The court placed Appellant "on deferred entry of judgment for a period of 002 years." *Id.* at 7. It also placed him on a number of conditions, including requiring that he "appear on the next court date" and "file proof of enrollment in the deferred entry of judgment program by 5/28/13." *Id.*

3. On July 29, 2013, the case was "called for proof of enrollment." *Id.* at 8. The "defendant is not present in court, and not represented by counsel." *Id.* The court found that "the defendant failed to comply with the terms and conditions of probation." *Id.* at 9. It revoked his probation and issued a bench warrant. *Id.*

4. On June 7, 2018, the case was "called for sentencing." *Id.* The "defendant is not present in court, and not represented by counsel." *Id.* The docket notes that "the district attorney's office received a letter from the defendant who is

incarcerated in prison." *Id.* The court "orders probation denied." *Id.* It sentenced Appellant to "364 days in Los Angeles County Jail." *Id.*

Accordingly, the certified docket establishes that Appellant was sentenced on June 7, 2018, to 364 days imprisonment without counsel.

### 3. Enhancing a sentence based on an uncounseled conviction is plain error.

"A conviction obtained without counsel in violation of the Sixth Amendment may not be used to enhance the punishment for a later offense." *United States v. Rivera-Bugarin*, 626 F. App'x 632, 635 (7th Cir. 2015) (unpublished) (citing *Custis v. United States*, 511 U.S. 485, 494-96 (1994)). However, "the defendant bears the burden of proving that the prior conviction is invalid, and the denial of counsel must be plainly detectable from the face of the record." *Id.* (citing *United States v. Seals,* 419 F.3d 600, 609 (7th Cir. 2005); *United States v. Hach*, 162 F.3d 937, 950 (7th Cir. 1998); *United States v. Katalinich,* 113 F.3d 1475, 1480–81 (7th Cir. 1997)). "For purposes of the Sentencing Guidelines, if the defendant proves that a Sixth Amendment violation occurred, the prior conviction cannot be counted in his criminal history score." *United States v. Feliciano*, 498 F.3d 661, 664 (7th Cir. 2007).

Here, the certified docket establishes that Appellant's prior conviction was obtained in violation of the Sixth Amendment. In *Gill v. Estelle*, this Court explained that "*Mempa v. Rhay*[, 389 U.S. 128 (1967)] mandates that counsel be provided . . . at a combined revocation of probation/sentencing proceeding." 544 F.2d at 1337.

25

This is because "the sentence in *Mempa* was imposed at the time of the probation revocation and not when probation was first granted." *Id.* at 1337–38 (citing *Townsend v. Burke*, 334 U.S. 736 (1948)). Likewise, the certified docket establishes that Appellant's 364 day sentence was imposed for the first time at his probation revocation hearing, without the benefit of counsel.

### 4. The error affected his substantial rights and warrants the Court's correction.

As explained in section I(C) below, Appellant was sentenced at the low-end of the incorrect range, and the record indicates that the error impacted his sentence and affected his substantial rights.[5]

In the ordinary case, Guideline error resulting in additional imprisonment merits discretionary remand. *See Rosales-Mireles v. United States*, 585 U.S. 129, 132 (2018). There are several reasons for this, all of which are fully applicable here. First, "[i]t is crucial in maintaining public perception of fairness and integrity in the justice system that courts exhibit regard for fundamental rights and respect for prisoners 'as people.'" *Id.* at 139–40 (quoting T. Tyler, Why People Obey the Law 164 (2006)). Second, "Guidelines miscalculations ultimately result from judicial error,"

---

[5]    Appellant's argument that he should be in criminal history category V instead of VI is subject to plain error review. But the analysis for both the third prong of plain error and harmless error generally remains the same. *See Olano*, 507 U.S. at 734–35. The difference lies in the shift of the burden of persuasion—where error is preserved, the proponent of the sentence bears the burden. *Id.* at 734. In the absence of objection, the appealing party bears it under the reasonable probability standard. *Id.*

26

which the judicial system itself bears special responsibility to correct. *Id.* at 140. And third, "a decision remanding a case to the district court for resentencing on the basis of a Guidelines miscalculation is far less burdensome than a retrial, or other jury proceedings, and thus does not demand such a high degree of caution." *Id.* at 143.

Indeed, with *Rosales-Mireles's* guidance in hand, this Court has repeatedly allowed resentencing where the district court miscalculated the guideline range. *United States v. Kelley*, 40 F.4th 276, 287–88 (5th Cir. 2022) ("[W]e are required to hold that a plain error" in the guideline range calculation "violates the fourth prong of plain error analysis."); *United States v. Stoglin*, 34 F.4th 415, 421 (5th Cir. 2022); *United States v. Villarreal-Garcia*, 761 F. App'x 425, 428 (5th Cir. 2019) (unpublished).

### C.   The impact of the two Guidelines errors cannot be dismissed as without prejudice.

With no explanation, the court sentenced Appellant to 77 months—the low end of the incorrect Guidelines range. The only justification for the sentence is a boilerplate statement in the Statement of Reasons form routinely issued by this district court:

> In determining the sentence, the Court considered the advisory guidelines, as well as statutory concerns listed in 18 U.S.C. § 3553(a). This sentence is sufficient, but not greater than necessary, to achieve the Court's sentencing objectives of punishment, deterrence, and protection of the public.

27

ROA.263. The Statement of Reasons also includes the court's standard disclaimer: "Even if the guideline calculations are not correct, this is the sentence the Court would otherwise impose under 18 U.S.C. § 3553." ROA.263. Sometimes such disclaimers defeat a claim for relief, in spite of Guideline error. *See, e.g.*, *United States v. Richardson*, 676 F.3d 491, 511 (5th Cir. 2012); *United States v. Reyna-Aragon*, 992 F.3d 381, 387–89 (5th Cir. 2021); *United States v. Medel-Guadalupe*, 987 F.3d 424, 429 (5th Cir. 2021); *United States v. Redmond*, 965 F.3d 416, 420–21 (5th Cir. 2020); *United States v. Vega-Garcia*, 893 F.3d 326, 328 (5th Cir. 2018); *United States v. Guzman-Rendon*, 864 F.3d 409, 411–12 (5th Cir. 2017); *United States. v. Rico*, 864 F.3d 381, 386–87 (5th Cir. 2017); *United States v. Castro-Alfonso*, 841 F.3d 292, 297–99 (5th Cir. 2016); *United States v. Giglio*, 126 F.4th 1039, 1046–47 (5th Cir. 2025); *United States v. Hott*, 866 F.3d 618, 621–22 (5th Cir. 2017); *United States v. Leontaritis*, 977 F.3d 447, 452 (5th Cir. 2020); *United States v. Nanda*, 867 F.3d 522, 531 (5th Cir. 2017); *United States v. Nino-Carreon*, 910 F.3d 194, 197–98 (5th Cir. 2018).

But that boilerplate statement cannot be treated like magic words, inoculating against this Court's review of the district court's erroneous application of the law. "A court's mere recitation that it would impose the same sentence," "is neither necessary nor sufficient"—these are not "magic-words" in Fifth Circuit jurisprudence. *Giglio*, 126 F.4th 1047. Though the disclaimer "is relevant" to the inquiry, "it is not

28

decisive." *United States v. Ritchey*, 117 F. 4th 762, 767 (5th Cir. 2024). Importantly, "it is not enough for the district court to say the same sentence would have been imposed but for the error." *United States v. Tanksley*, 848 F.3d 347, 353 (5th Cir.), *supplemented*, 854 F.3d 284 (5th Cir. 2017) (citation omitted). "The government must point to evidence in the record that convincingly demonstrates the district court would impose the *same* sentence for the *same* reasons." *Id*. (cleaned up) (emphasis in original).

Several characteristics of this case indicate that the erroneous range of 77 to 96 months impacted the sentence: (1) the district court did not consider the correct range of 46 to 57 months; (2) the sentence coincides with the low-end of the incorrectly calculated range; (3) the district court did not make any statements at sentencing justifying the sentence or suggesting that it had this sentence in mind; (4) the 77-month sentence falls well outside the correct Guidelines range of 46 to 57 months, and court made no statements justifying an upward departure or variance; and (5) the same statement disclaiming reliance on the Guidelines routinely appears in the Statement of Reasons form for defendants sentenced in this particular district court, which is a clerical, rather than substantive document that should not be the sole basis for denying appellate relief. Accordingly, the record does not support a finding that Appellant did not suffer prejudice as a result of the Guideline errors.

**1.    The record does not support a finding of no
prejudice under the more demanding *Ibarra-Luna*
test, where the sentence coincides with the low-end
of the incorrectly calculated range and the court did
not otherwise explain or justify the sentence.**

"When a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez v. United States*, 578 U.S. 189, 198 (2016).

But-for the error in calculating his offense level, Appellant's base offense level is 20, based on having one prior controlled substance offense under U.S.S.G. § 2K2.1(a)(4)(A). After subtracting three levels for acceptance of responsibility, his total offense level is 17 instead of 21. ROA.192-93. But-for the error in assessing two criminal history points for an uncounseled prior conviction, he would be in criminal history category V instead of VI, and his advisory range is 46 to 57 months. *See* ROA.200, 209; U.S.S.G. 2K2.1(a)(4)(A); U.S.S.G. Ch. 5, Pt. A (Total Offense Level 17, criminal history category V). Appellant was sentenced under an incorrect guideline range, triggering *Molina-Martinez*'s strong expectation of prejudice. *Molina-Martinez*, 578 U.S. at 201 ("Absent unusual circumstances," a defendant need only "point[ ] to the application of an incorrect, higher Guidelines range and the sentence he received thereunder" to demonstrate prejudice.).

This Court employs two tests for determining the effect of a Guidelines error. Under the first, a non-guideline sentence does not result in prejudice if the district court: "(1) contemplated the correct Guideline range in its analysis and (2) stated that it would have imposed the same sentence even if that range applied." *United States v. Duhon*, 541 F.3d 391, 396 (5th Cir. 2008) (citing *United States v. Bonilla*, 524 F.3d 647, 656 (5th Cir. 2008).[6] The second standard, set forth in United States v. Ibarra-Luna, 628 F.3d 712 (5th Cir. 2010), applies, at least, where the sentencing court failed to consider the correct range:

> First, the government must convincingly demonstrate that the district court would have imposed a sentence outside the correct Guidelines range for the same reasons it gave for imposing a sentence outside the miscalculated Guidelines range. Second, it must show that the ... sentence the district court imposed was not influenced in any way by the erroneous Guidelines calculation.

*Id.* at 718-19.

Of these two standards, the second, described as the *Ibarra-Luna* standard, is considered "the more demanding." *United States v. Rico-Mejia*, 859 F.3d 318, 323 (5th Cir. 2017), *overruled on other grounds by United States v. Reyes-Contreras*, 910

---

[6]     Some cases attribute this first test to *United States v. Richardson*, 676 F.3d 491, 511 (5th Cir. 2012). *See, e.g.*, *United States v. Guzman-Rendon*, 864 F.3d 409, 411 (5th Cir. 2017) (citing *Richardson*, 676 F.3d at 511). But *Richardson* derived its test from *Duhon* and *Bonilla*. *See Richardson*, 676 F.3d at 511 (citing *Duhon*, 541 F.3d at 396; *Bonilla*, 524 F.3d at 656). To the extent there is any difference between the rule as articulated in *Richardson* and in *Duhon/Bonilla*, the rule of orderliness requires that the Court use the rule as articulated *Duhon/Bonilla*, which predates *Richardson*. *See Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008).

F.3d 169 (5th Cir. 2018), *overruled on other grounds by Borden*, 593 U.S. 420. "This court has noted that such a showing involves a heavy burden, requiring the proponent to point to evidence in the record that will convince [the appellate court] that the district court had a particular sentence in mind and would have imposed it, notwithstanding the error." *Id*. (quoting *Richardson*, 676 F.3d at 511) (cleaned up).

The more demanding *Ibarra-Luna* test applies here because the court did not consider the true Guideline range of 46 to 57 months. As stated in *Rico-Mejia*, for the court to have "considered" the correct range, there must be "an explicit or particularized statement from the district court showing that it calculated or considered the correct range." *Id*.; *see also United States v. Reyna-Aragon*, 992 F.3d 381, 387–88 (5th Cir. 2021)(applying *Ibarra-Luna* where "[t]he sentencing transcript does not show that the district court expressly considered the correct Guidelines range …"). No such statement appears in this case. The court simply did not reference the true range at all during sentencing, nor in the Statement of Reasons. *See* ROA.155-73, 263.

Under this Court's precedent, the improper range impacted the sentence because the sentence of 77 months coincides with the exact low end of the incorrect range, and the court did not make any statements at sentencing to justify this sentence or suggest that it had it in mind. The defendant in *Rico-Mejia* drew a "parallel between his situation and the situation of the defendant in *United States v. Martinez-*

32

*Romero*, 817 F.3d 917 (5th Cir. 2016), where the lowest end of the improperly calculated guideline range became the defendant's precise sentence, an occurrence which the court refused to attribute to 'mere serendipity.'" *Rico-Mejia*, 859 F.3d at 324. The Court noted that both cases involved: "(1) sentences that correspond precisely to the bottom of an erroneous guidelines calculation; (2) statements by the district court regarding criminal history and willingness to impose sentences regardless of error in guideline calculation." *Id.* (footnote omitted). The court noted that in *Martinez-Romero*, there was "no . . . evidence at all" to "indicate that the court's decision to select precisely the bottom of the recommended Guidelines range was independent of the erroneous calculation." *Id.* And while noting that "there is some inferential evidence" in *Rico-Mejia*, the government failed to carry its "heavy burden[,]" given that the sentence "corresponded to precisely the bottom of the erroneous range," and the "district court's other statements at the sentencing hearing do nothing to prove that the erroneous" range "did not impact the sentence." *Id.* at 324–25.

The same is true here. The sentence is the exact low end of the incorrect range, and the court did not make *any* statements at sentencing to justify, explain, or otherwise indicate how it arrived at the sentence. It simply stated "I will now state the sentence determined pursuant to Title 18 U.S.C., Section 3553[,]" and then announced the 77-month sentence. ROA.171. The Statement of Reasons, discussed in

33

greater detail below, includes boilerplate language that routinely appears in State-ment of Reasons forms for defendants sentenced in this particular district court. *See* ROA.263. It does not justify the sentence in this case, especially where the court did not even consider, and in all likelihood was unaware of, the correct range.

This Court has repeatedly vacated and remanded in such circumstances where the sentence coincides with the low-end of the incorrect range "because it is clear that the improperly calculated Guidelines range influenced the court's sentence." *United States v. Redmond*, 965 F.3d 416, 421–22 (5th Cir. 2020) (citing *United States v. Rico-Mejia*, 859 F.3d 318, 320 (5th Cir. 2017) (court sentenced defendant to 41 months, at low end of improperly calculated Guidelines range of 41 to 51 months), *overruled by United States v. Reyes-Contreras*, 910 F.3d 169 (5th Cir. 2018); *Tanks-ley*, 848 F.3d at 353 (court sentenced defendant at the bottom of the erroneously calculated Guideline range); *United States v. Bazemore*, 608 F. App'x 207, 213 (5th Cir. 2015) (court sentenced defendant to 292 months, at low end of improperly cal-culated Guidelines range of 292 to 365 months); *United States v. Cardenas*, 598 F. App'x 264, 266 (5th Cir. 2015) (court sentenced defendant to 108 months, at low end of improperly calculated Guidelines range of 108 to 135 months); *United States v. Leal-Rax*, 594 F. App'x 844, 851 (5th Cir. 2014) (court sentenced defendant to 37 months, at low end of improperly calculated Guidelines range of 37 to 46 months); *United States v. Vasquez-Tovar*, 420 F. App'x 383, 383-84 (5th Cir. 2011) (court

sentenced defendant to 70 months, at low end of improperly calculated Guidelines range of 70 to 87 months)); *see also United States v. Walters*, No. 22-50774, 2024 WL 512555 at *2 (5th Cir. Feb. 9, 2024) (finding that the improper guideline calculation influenced the sentence, where the sentence of 71 months "coincides" with the highest end of the improper range). It should do the same here, "because it is clear that the improperly calculated Guidelines range influenced the court's sentence." *Redmond*, 965 F.3d at 421–22.

> **2.      Thee 77-month sentence falls well outside the correct Guidelines range, and court made no statements justifying an upward departure or variance.**

As noted earlier, the sentence of 77 months represents a significant variance from the correct range of 46 to 57 months. The court did not make any statements at sentencing explaining this sentence or suggesting that it had the 77-month sentence in mind. The *only* statement in the record justifying the sentence is boilerplate language that appeared in the Statement of Reasons form, filed three days after sentencing:

> In determining the sentence, the Court considered the advisory guidelines, as well as statutory concerns listed in 18 U.S.C. § 3553(a). This sentence is sufficient, but not greater than necessary, to achieve the Court's sentencing objectives of punishment, deterrence, and protection of the public. Even if the guideline calculations are not correct, this is the sentence the Court would otherwise impose under 18 U.S.C. § 3553.

ROA.263. This statement indicates that the court "considered the advisory guidelines," ROA.263, and elsewhere, the Statement of Reasons states that Appellant was sentenced "within the guideline range." ROA.261. In *Tanksley*, this Court found that those two facts, combined with the district court's recognition that the sentence was at "the bottom of the guidelines" weighed against a finding of harmlessness. *See Tanksley*, 848 F.3d at 353. The same is true here, where the record clearly reveals the court's intent to sentence Appellant *within* the Guidelines, rather than impose an upward variance of 20 months. *See* ROA.261.

Not only is the record devoid of any intention to impose a 20-month upward variance, but the court never provided any reason for a variance. This is contrary to *Gall v. United States*, which mandates that after "settling on the appropriate sentence, [the district judge] must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." 552 U.S. 38, 50 (2007). If, as here, "he decides that an outside-the-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* Here, the court did not provide any reasons justifying the 20-month upward variance, or suggesting that it had this sentence in mind. Though the government may point to the above-quoted language in the Statement of Reasons, ROA.263, that statement does not provide an explanation for why a 20-month upward variance is warranted in this

36

*particular case*, as required for "meaningful appellate review." *Gall*, 553 U.S. at 50. And, as explained *infra* pages 45-46, this exact language (though sometimes accompanied by additional language justifying the sentence or a term of supervised release) has appeared in the Statement of Reasons form for at least 21 other defendants sentenced by this district court since September 2024. It cannot be viewed as evidence that the district court made an "individualized assessment based on the facts presented" that Appellant deserved a 20-month upward variance. *See Gall*, 553 U.S. at 50.

The more likely explanation is that the court intended to sentence Appellant to the low-end of what it viewed as the applicable range. As in *Parra*, where this Court found that the defendant's substantial rights had been affected under prong 3 of plain error review, "[t]his was a scenario in which the district court tethered the sentence imposed to the Guidelines." *United States v. Parra*, 111 F. 4th 651, 662 (5th Cir. 2024) (citations omitted). "At the very least, the district court's explanation did not make clear that the district court based the sentence it selected on factors independent of the Guidelines" and "therefore, the record does not reflect what the district court might have done in light of the correct Guidelines range." *Id*. (citation omitted; cleaned up). The error impacted the sentence and cannot be viewed as without prejudice.

> **3.    The boilerplate disclaimer of reliance on the Guidelines routinely appears in cases sentenced by this court, and should not be used to bar appellate review.**

The government will likely point to the below language in Appellant's Statement of Reasons form as an indication that the district court did not rely on the erroneous Guidelines range: "Even if the guideline calculations are not correct, this is the sentence the Court would otherwise impose under 18 U.S.C. § 3553." ROA.263. But this *same exact language* appeared verbatim in the Statement of Reasons form for at least 21 other defendants sentenced by this district court since September 2024.[7] Of the cases analyzed by Appellant's counsel, only one non-supervised release case during this time period did *not* include this language in the Statement of

---

[7]    Statement of Reasons, at 4, ECF No. 46, *United States v. Ball*, No. 4:24-cr-00250-O (N.D. Tex. Mar. 14, 2025); Statement of Reasons, at 4, ECF No. 39, *United States v. Brathole*, No. 4:24-cr-00308-O (N.D. Tex. May 30, 2025); Statement of Reasons, at 4, ECF No. 26, *United States v. Castillo-Rodriguez*, No. 4:24-cr-00152-O (N.D. Tex. Oct. 25, 2024) (including additional language regarding the need to impose supervised release); Statement of Reasons, at 4, ECF No. 73, *United States v. Clark*, No. 7:25-cr-00001-O (N.D. Tex. Jun. 27, 2025); Statement of Reasons, at 4, ECF No. 48, *United States v. Culp*, No. 7:25-cr-00003-O (N.D. Tex. Jun. 6., 2025); Statement of Reasons, at 4, ECF No. 33, *United States v. Ferrell*, No. 7:25-cr-00004-O (N.D. Tex. Jun. 13, 2025); Statement of Reasons, at 4, ECF No. 38, *United States v. Foster*, No. 4:24-cr-00315-O (N.D. Tex. Apr. 4, 2025); Statement of Reasons, at 4, ECF No. 34, *United States v. Garcia-Gutierrez*, No. 4:24-cr-00229-O (N.D. Tex. Jan. 31, 2025) (including additional language regarding the need to impose supervised release); Statement of Reasons, at 4, ECF No. 39, *United States v. Goines*, No. 7:24-cr-00022-O (N.D. Tex. Apr. 25, 2025) (including additional language justifying the sentence); Statement of Reasons, at 4, ECF No. 35, *United States v. Gomez*, No. 4:24-cr-00216-O (N.D. Tex. Mar. 14, 2025) (including additional language regarding the need to impose supervised release); Statement of Reasons, at 4, ECF No. 31, *United States v. Gomez-Carillo*, No. 7:24-cr-00016-O (N.D. Tex. Jan. 31, 2025); Statement of Reasons, at 4, ECF No. 47, *United States v. Guy*, No. 4:24-cr-00214-O (N.D. Tex. Jan. 27, 2025); Statement of Reasons, at 4, ECF No. 44,

Reasons form. *See* Statement of Reasons, at 4, ECF No. 39, *United States v. Lee*, No. 7:24-cr-00014-O (N.D. Tex. Jan. 31, 2025). In addition, language disclaiming reliance on the Guidelines appeared in many of the court's other cases.[8] Given its ubiquity, this language should not be treated as "magic words" that can insulate sentences from appellate review. This Court has warned that the harmless-error doctrine "is

---

*United States v. Hackney*, No. 4:25-cr-00017-O (N.D. Tex. May 30, 2025); Statement of Reasons, at 4, ECF No. 27, *United States v. Huete-Torres*, No. 4:24-cr-00146-O (N.D. Tex. Oct. 25, 2024); Statement of Reasons, at 4, ECF No. 29, *United States v. Macias-Ordonez*, No. 4:25-cr-00001-O (N.D. Tex. Apr. 25, 2025); Statement of Reasons, at 4, ECF No. 30, *United States v. Meraz-Ramirez*, No. 4:24-cr-00128-O (N.D. Tex. Sep. 27, 2024) (including additional language regarding the need to impose supervised release); Statement of Reasons, at 4, ECF No. 47, *United States v. Nguyen*, No. 7:25-cr-00002-O (N.D. Tex. Jun. 13, 2025); Statement of Reasons, at 4, ECF No. 31, *United States v. Olvera-Gamez*, No. 4:24-cr-00130-O (N.D. Tex. Nov. 15, 2024); Statement of Reasons, at 4, ECF No. 44, *United States v. Pearson*, No. 4:24-cr-00290-O (N.D. Tex. Apr. 25, 2025); Statement of Reasons, at 4, ECF No. 34, *United States v. Ramirez-Benavidez*, No. 4:24-cr-00166-O (N.D. Tex. Nov. 15, 2024); Statement of Reasons, at 4, ECF No. 87, *United States v. Rivera*, No. 4:24-cr-00309-O (N.D. Tex. May 2, 2025); Statement of Reasons, at 4, ECF No. 41, *United States v. Williams*, No. 4:24-cr-00223-O (N.D. Tex. Feb. 24, 2025).

[8]     *See Hott*, 866 F.3d at 622 ("'[e]ven if the guideline calculations are not correct, this is the sentence the Court would otherwise impose under 18 U.S.C. § 3553.'")(same judge as the case at bar); *United States v. Garcia*, 647 Fed. Appx. 408, 410 (5th Cir. 2016)(unpublished)("Because the district court stated in its Statement of Reasons that '[e]ven if the guidelines calculations are not correct, this is the sentence the Court would otherwise impose under 18 U.S.C. § 3553,' the Government has made the required showing.")(same judge); *United States v. Montgomery*, 634 F. App'x 127, 131 (5th Cir. 2015)(unpublished)("Furthermore, the district court in this case stated that '[e]ven if the guideline calculations are not correct, this is the sentence the Court would otherwise impose under 18 U.S.C. § 3553.'")(same judge); *Tanksley*, 848 F.3d at 353 ("Here, the district court stated that '[e]ven if the guideline calculations are not correct, this is the sentence the Court would otherwise impose under 18 U.S.C. § 3553.'")(same judge); *United States v. Bravo*, No. 20-10008, 2021 WL 1561385 (5th Cir. Apr. 20, 2021)(unpublished)("In its Statement of Reasons, the district court also noted that, '[e]ven if the guideline calculations are not correct, this is the sentence the Court would otherwise impose under 18 U.S.C. § 3553.'")(same judge); *see also Bazemore*, 608 F. App'x at 216 ("…the district court stated that it would have imposed the same sentence regardless of whether it incorrectly applied the enhancement.")(same judge).

not to be deployed as a talisman to insulate sentences that otherwise ought to be revisited by all participants: opposing counsel, the parties, and sentencing judges." *United States v. Kinzy*, No. 22-30169, 2023 WL 4763336 at *14 (5th Cir. July 26, 2023) *as revised* (Aug. 24, 2023), *cert. denied* 144 S. Ct. 2682 (2024).

Moreover, as a "clerical[,]" *United States v. Shakbazyan*, 841 F.3d 286, 292 (5th Cir. 2016), rather than a substantive document, the Statement of Reasons form should not be the sole basis for disregarding the errors. This Court has explained that the Statement of Reasons form is "not intended to provide any safeguards to a defendant but is rather intended to provide information to the United States Sentencing Commission as a record-keeping function." *United States v. Bernardez-Avila*, 613 F. App'x 440, 441 (5th Cir. 2015) (unpublished) (citing *United States v. Pillault*, 783 F.3 282, 292, n.2 (5th Cir. 2015)). Therefore, "if there is a correctable error in the [Statement of Reasons form], it is not substantive." *Id.* The Court should instead look to the sentencing transcript as the best indicator of the district court's sentencing intent. *Cf. Shakbazyan*, 841 F.3d at 292 (noting that the "transcript evinces the district court's thorough explanation of its reasons for imposing" the sentence).

This Court has previously credited the same Guidelines disclaimer when, like here, it only appeared in the Statement of Reasons. *See Hott*, 866 F.3d at 621. But in *Hott*, the court at sentencing explicitly identified factors that influenced the sentence, such as "the offense conduct as well as the relevant conduct" and "the defendant's

40

prior criminal history." *Id.* at 621 (cleaned up). The court also said, "I believe this sentence provides just punishment in this case, affords adequate deterrents to others, and protect[s] the public from future crimes of the defendant." *Id*. (cleaned up). This Court credited the disclaimer ***in light of those*** statements, noting that the written disclaimer was "***consistent*** with the district court's oral pronouncement of the sentence[.]" *Id.* at 621, n. 1 (emphasis added). The same cannot be said here, where the district court did not provide ***any*** explanation of how it arrived at the sentence, other than that it determined the sentence based on 18 U.S.C. § 3553. *See* ROA.171-73.

Unlike *Hott*, where the written disclaimer was deemed "consistent" with the "district court's oral pronouncement of the sentence," *Hott*, 866 F.3d at 621, n.1,[9] here the disclaimer is at odds with the rest of the sentencing record. That record shows that the court intended to impose a sentence ***within*** the Guidelines, ROA.261, the 77-month sentence coincides with the low-end of the incorrectly calculated range and falls well outside the correct Guidelines range of 46 to 57 months, the court made no statements justifying an upward departure or variance, nor did it make any

---

[9]    In *Sealed Appellant*, this Court cited *Hott* and credited the written Guidelines disclaimer. *United States v. Sealed Appellant*, No. 24-30570, 2025 WL 1924524 at *3, n.2 (5th Cir. Jul. 14, 2025) (unpublished). As in *Hott*, the Court held that the written disclaimer was consistent with the oral pronouncement of the sentence, where the district court "expressly disclaimed any reliance on the allegedly erroneous Guidelines range" by stating its intent to impose a "variance" and justified the sentence based on non-Guideline factors such as "the defendant's criminal history, his personal characteristics and his involvement in the instant offense." *Id.* at **2-3, n.2 (cleaned up).

statements at sentencing explaining the sentence or suggesting that it had this partic-

ular sentence in mind. The errors are not without prejudice.

**II.    Under *Bruen* and *Diaz*, § 922(g)(1) is unconstitutional as-applied to Appellant [foreclosed].**

**A.    The standard of review is *de novo*.**

This Court reviews *de novo* whether 18 U.S.C. § 922(g)(1) is unconstitutional

under the Second Amendment. *United States v. Bailey*, 115 F.3d 1222, 1225 (5th Cir.

1997).

**B.    *Diaz* limits the kinds of felonies that can justify depriving a citizen of his Second Amendment rights.**

This Court, in the wake of *Bruen* and *United States v. Rahimi*, 602 U.S. 144

(2024), applies "a two-step process for Second Amendment challenges." *United*

*States v. Connelly*, 117 F.4th 269, 274 (5th Cir. 2024). First, it "ask[s] whether the

Second Amendment's plain text covers an individual's conduct." *Id*. (citing *Bruen*,

597 U.S. at 17). Second, it "ask[s] 'whether the challenged regulation is consistent

with the principles that underpin our regulatory tradition.'" *Id*. (citation omitted).

The government bears the "heavy burden" of demonstrating "that the chal-

lenged regulation is relevantly similar to laws our tradition is understood to

permit." *Id*. (cleaned up).  To do so, the government must "find[] and explicat[e]

historical precursors supporting the challenged law's constitutionality." *Id*. (cleaned

42

up). "The challenged and historical laws are 'relevantly similar' if they share a common 'why' and 'how[.]'" *Id.* That is, "they must both (1) address a comparable problem (the 'why') and (2) place a comparable burden on the right holder (the 'how'). The government need not [present] a 'dead ringer' or 'historical twin' to be successful; it can also present an analogous historical regulation with a sufficiently similar 'why' and 'how.'" *Id.* (cleaned up; citing *Bruen* and *Rahimi*).

As this Court has held, "the plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1)[.]" *Diaz*, 116 F. 4th at 467. Thus, the burden "shifts to the government to demonstrate that regulating [his] possession of a firearm is 'consistent with the Nation's historical tradition of firearm regulation.'" *Id.* (quoting *Bruen*, 597 U.S. at 24). Particularly, the government must show "that the Nation has a longstanding tradition of disarming someone with a criminal history analogous to [his]." *Id.*

In *Diaz*, the Court established a new framework for evaluating as-applied Second Amendment challenges in § 922(g)(1) cases. Most importantly, the Court held that the analysis should *only* consider the defendant's "pertinent criminal history"— that is, "predicate offenses under § 922(g)(1)." 116 F.4th at 467. Under that rubric, the Court identified certain factors that it will ***not*** consider when evaluating the constitutional challenge:

- **Dismissed charges:** "In 2018 and 2020, Diaz was charged with possession of a controlled substance and possession with

intent to deliver a controlled substance, but those charges were dismissed." 116 F.4th at 467. Accordingly, the Court said those charges "are not relevant for our purposes." *Id.*

- **Convictions that were not punishable by more than one year in prison:** Diaz "was convicted in state court of possession of less than two ounces of marijuana, but that is not a felony punishable by more than one year, as required by § 922(g)(1)." 116 F.4th at 467; *see also United States v. Contreras*, 125 F. 4th 725, at 730 & n.2 (5th Cir. 2025) (disregarding prior misdemeanors because they are irrelevant to the Second Amendment challenge).

- **Convictions for conduct that occurred simultaneously with the instant federal offense:** In the same federal indictment charging Diaz under 18 U.S.C. § 922(g)(1), Diaz was also charged with "possession" of drugs "with intent to distribute." He was convicted. That offense is irrelevant because it "cannot serve as a predicate for his § 922(g)(1) charge in the same indictment"; § 922(g)(1) "must instead rely on previous history." *Diaz*, 116 F.4th at 467.

This Court ultimately affirmed Diaz's conviction. *Id.* at 472. It cited an historical tradition of imposing severe, permanent, punishments on people (like Diaz) convicted of certain theft offenses. *See id.* at 466–472. Specifically, it explained that "[a]t the time of the Second Amendment's ratification, those—like Diaz—guilty of certain crimes—like theft—were punished permanently and severely," that is, by death or estate forfeiture, and "permanent disarmament was [also] a part of our country's arsenal of available punishments at that time." *Id.* at 472.

**C.    Appellant submits for further review that as-applied to him, § 922(g)(1) violates the Second Amendment.**

*Giglio*, 126 F.4th 1039 and *Contreras*, 125 F. 4th 725 foreclose Appellant's as-applied challenge, because he was on probation at the time of the instant offense. *See* ROA.198, 200. He submits for further review that by making a defendant's supervised release or probationary status the deciding factor triggering the prohibition on firearm possession, these decisions disregard the clear framework set forth in *Diaz* for evaluating an as-applied challenge to § 922(g)(1), and were wrongly decided.[10]

**D.    The government cannot carry its burden under *Diaz*.**

The impact of *Diaz* is now clear: this Court must examine a § 922(g)(1) defendant's felony convictions on a case-by-case basis, with particular attention to the treatment of those crimes, or closely analogous crimes, at the Founding.

Under *Diaz's* rubric, Appellant's pertinent criminal history is limited to:

---

[10]    Alternatively, *Diaz* was wrongly decided and that § 922(g)(1) is unconstitutional irrespective of the nature of the defendant's prior convictions. *See Kanter v. Barr*, 919 F.3d 437, 454 (7th Cir. 2019) (Barrett, J., dissenting) (noting scholars have not been able to identify any founding-era laws disarming all felons); *see also* Adam Winkler, *Heller's Catch-22*, 56 UCLA L. Rev. 1551, 1563 & n.67 (2009) ("The Founding generation had no laws limiting gun possession by the mentally ill, nor laws denying the right to people convicted of crimes.").

The earliest firearm restrictions for felons in America were passed in the 20th century. *See* Joseph G.S. Greenlee, *The Historical Justification for Prohibiting Dangerous Persons from Possessing Arms*, 20 Wyo. L. Rev. 249, 272-75 (2020) (discussing "Twentieth-Century Arms Prohibitions"). The modern statutes that dispossessed felons of firearms, including § 922(g)(1), bear "little resemblance to laws in effect at the time the Second Amendment was ratified[.]" *United States v. Booker*, 644 F.3d 12, 24 (1st Cir. 2011); *see also Nat'l Rifle Ass'n of Am.*, 700 F.3d at 196.

1) Robbery;

2) Burglary;

3) Possession of cocaine base for sale;

4) Possession of a controlled substance; and

5) Grand Theft: Money/Labor/Property.

ROA.194-98. Because Appellant's pertinent criminal history does not include a felony punished "permanently and severely" at the Founding, *Diaz*, 116 F.4th at 472, the government cannot meet its burden. Though the government may point to certain cases to suggest that Appellant may be constitutionally disarmed based on his priors, he submits that those cases were wrongly decided or not controlling, or both.

In *Kimble*, this Court held that an individual with a drug trafficking conviction can be disarmed because his "predicate convictions for drug trafficking convey that he belongs to a class of dangerous felons that our regulatory tradition permits legislatures to disarm." *United States v. Kimble*, 142 F.4th 308, 318 (5th Cir. 2025). Because "Founding-era governments took guns away from those it perceived to be dangerous," the Court reasoned that "Congress today" may categorically disarm "felon drug traffickers" because it regards them as a group "as too dangerous to trust with weapons." *Id.* at 316 (citation omitted).

But in *Rahimi*, Justice Gorsuch cautioned against the conclusion that a legislature can disarm groups of people it deems "dangerous." *See Rahimi*, 602 U.S. at

46

713 (Gorsuch, J., concurring). The government had advocated for a "responsible" dividing line that would allow legislatures to constitutionally disarm persons deemed not "responsible" in its brief. Br. for United States, *United States v. Rahimi*, 602 U.S. 680 (2024) (No. 22-915), 2023 WL 5322645, at \*\*10–27. At oral argument, the government conceded that it was really advancing a "dangerousness" argument masquerading as a "responsible" one. Oral Argument at 10:17–21, *United States v. Rahimi*, 602 U.S. 680 (2024) (No. 22-915) ("CHIEF JUSTICE ROBERTS: Well…you're using 'responsible' as a placeholder for dangerous with respect to the use of firearms? GENERAL PRELOGAR: Correct."). And with that clarity, the Supreme Court unequivocally "reject[ed] the Government's contention that Rahimi may be disarmed simply because he is not 'responsible.'" *Rahimi*, 602 U.S. at 701; *see also Rahimi*, 602 U.S. at 772–73 (Thomas, J., dissenting) ("Not a single Member of the Court adopts the Government's theory."). And ultimately, the Court upheld the statute not because all individuals deemed "dangerous" could be disarmed, but based on 18 U.S.C. § 922(g)(8)(C)(i)'s element requiring "a court [to have found] that the defendant 'represents a credible threat to the physical safety' of another." *Rahimi*, 602 U.S. at 698–99 (quoting 18 U.S.C. § 922(g)(8)(C)(i)).

*Kimble*, therefore, was wrongly decided insofar as it categorically excludes all individuals convicted of a drug trafficking offense from possessing a firearm, on the theory that all such individuals are "dangerous." At the very least, Judge Graves

47

offers persuasive reasoning in his concurring opinion that an individual assessment is warranted, given the logical fallacy that drug users are not categorically "intrinsically dangerous" but "drug possessors with intent" are. *Kimble*, 142 F.4th at 318-22 (Graves, J., concurring).

Finally, *United States v. Schnur*, 132 F. 4th 863 (5th Cir. 2025)—which could be read to disqualify Appellant from firearm possession based on his robbery, burglary, and theft convictions—is not controlling and fails to faithfully apply *Diaz*. In that case, the Court held that Schnur could be disarmed based on his felony aggravated battery conviction, a "crime of violence that indicates that he poses a threat to public safety and the orderly functioning of society." *Id.* at 870 (cleaned up). After firmly stating its holding, the Court went on to opine that Schnur's prior convictions for robbery and burglary "lend further support to the constitutionality of § 922(g)(1) as applied to Schnur." *Id.* (footnote omitted). Characterizing these offenses as "theft-related," it reasoned that *Diaz*—which observed that horse theft was a capital offense at the Founding—foreclosed Schnur's as-applied challenge. *Id.* at 870–71. As an initial matter, this language "could have been deleted without seriously impairing the analytical foundations of the holding," *see Matter of Cajun Elec. Power Co-op., Inc.*, 109 F.3d at 256, so it is nonbinding dicta. But also, it runs afoul of the guidance to "be careful not to read a principle at such a high level of generality that it waters down the right[.]" *Rahimi*, 602 U.S. at 740, (Barrett, J., concurring). That horse theft

was a capital offense at the Founding does not necessarily shed light on whether robbery, burglary, or stealing an item less valuable than a horse was.

Indeed, *Schnur* is devoid of any sort of discussion or analysis was to whether robbery, burglary or theft was punished "permanently and severely" at the Founding, *Diaz*, 116 F.4th at 472, and therefore falls short of what this Court required in *Diaz*. It cannot be the basis for denying Appellant's as-applied challenge.

### III. Courts either have misconstrued § 922(g)(1), or Congress did not validly exercise its Commerce powers [foreclosed].

#### A. The standard of review is *de novo*.

This Court reviews the constitutionality of federal statutes *de novo*. *Bailey*, 115 F.3d at 1225.

#### B. Correctly interpreted, § 922(g)(1) requires more than the indicted firearm's past movement in commerce for Appellant to possess it in or affecting commerce.

At rearraignment, the magistrate advised Appellant that § 922(g)(1) required the government to prove, *inter alia*, that Appellant knowingly possessed a firearm, and that "the possession of the charged firearm affected interstate or foreign commerce, that is, before the defendant possessed the charged firearms, it/they had traveled at some time from one state to another or between any part of the United States and any other country." ROA.123.

Consistent with the magistrate's admonishment, the prevailing interpretation of § 922(g)(1) confirms that the offense's "'in or affecting commerce' element can

49

be satisfied if the firearm possessed by a convicted felon had previously traveled in interstate commerce." *United States v. Rawls*, 85 F.3d 240, 242 (5th Cir. 1996). *See also Scarborough v. United States*, 431 U.S. 563, 575 (1977) ("[W]e see no indication that Congress intended to require any more than the minimal nexus that the firearm have been, at some time, in interstate commerce."). Even so, Appellant contends that accepting *Scarborough*'s interpretation of § 922(g)(1) means that Congress exceeded its powers in enacting the statute. "[W]hen statutory language is susceptible of multiple interpretations, a court may shun an interpretation that raises serious constitutional doubts and instead may adopt an alternative that avoids those problems." *Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018). Accordingly, the correct interpretation of "in or affecting commerce" would avoid these constitutional issues by requiring more to satisfy "in or affecting commerce" than what *Scarborough* deemed sufficient.

C.   **Even if the prevailing interpretation is correct, § 922(g)(1) exceeds Congress's enumerated powers.**

"Congress shall have power…To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes…." U.S. Const. art. I, § 8 cl. 3. Congress's commerce power, however, does not authorize it to regulate possession of every item that ever crossed a state boundary. Rather, "to be within Congress' power to regulate…under the Commerce Clause," a "regulated activity" must "'substantially affect' interstate commerce." *United States v. Lopez*, 514 U.S. 549,

50

559 (1995). As already stated, the Supreme Court decided that specific to this context, only a "minimal nexus," *i.e.*, "that [a] firearm have been, at some time, in interstate commerce," sufficed. *Scarborough*, 431 U.S. at 575. Yet "one might well wonder how it could rationally be concluded that mere possession of a firearm in any meaningful way concerns interstate commerce simply because the firearm had, perhaps decades previously before the charged possessor was even born, fortuitously traveled in interstate commerce." *Rawls*, 85 F.3d at 243 (Garwood, J., specially concurring).

Indeed, *Scarborough* resolves an issue of statutory interpretation, not one of constitutional dimension. *See United States v. Seekins*, 52 F.4th 988, 991 (5th Cir. 2022) (Ho, J., dissenting from denial of rehearing en banc). Yet this Court has long adhered to the view that a "minimal nexus" suffices to authorize congressional regulation of gun possession. *See, e.g.*, *United States v. Alcantar*, 733 F.3d 143, 145–46 (5th Cir. 2013); *Rawls*, 85 F.3d at 243 (5th Cir. 1996) (Garwood, J., specially concurring) ("*Scarborough*['s]…language…and the affirmance of the conviction there carry a strong enough implication of constitutionality to now bind us, as an inferior court"). But "*Scarborough*, as the lower courts have read it, cannot be reconciled with *Lopez*…." *Alderman v. United States*, 131 S. Ct. 700, 702 (2011) (Thomas, J., dissenting from denial of certiorari). In short, "the 'minimal nexus' of *Scarborough* can no longer be deemed sufficient under the *Lopez* requirement of substantially

51

affecting interstate commerce." *United States v. Kuban*, 94 F.3d 971, 978 (5th Cir. 1996) (DeMoss, J., dissenting).

Further, "to permit Congress to regulate or ban possession of any item that has ever been offered for sale or crossed state lines" "would trespass on traditional state police powers." *Alderman*, 131 S. Ct. at 703 (Thomas, J., dissenting from denial of certiorari). "The Commerce Clause is not a general license to regulate an individual from cradle to grave[.]" *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 557 (2012). "Any police power to regulate individuals as such. . . remains vested in the States." *Id.* Yet this Circuit's "precedent dramatically expands the reach of the federal government under the Commerce Clause" in precisely that way. *Seekins*, 52 F.4th at 992 (Ho, J., dissenting from denial of rehearing en banc). This remains so even though "[n]o Supreme Court precedent requires it" and "no proper reading of the Commerce Clause permits it." *Id.*

## Conclusion

In the absence of intervening law on his constitutional challenges, Appellant asks that the Court vacate his sentence and remand for resentencing.

Respectfully submitted,

JASON D. HAWKINS
FEDERAL PUBLIC DEFENDER

*/s/ Kevin Joel Page*
KEVIN JOEL PAGE
ASSISTANT FEDERAL PUBLIC DEFENDER
525 South Griffin
Suite 629
Dallas, Texas 75202
(214) 767-2746

*Counsel for Appellant*

**Certificate of Service**

I certify that on August 18, 2025, I filed this brief electronically in the Court's ECF system. Opposing counsel has therefore been served pursuant to Fifth Circuit Rule 25.2.5.  I further certify that: 1) any required privacy redactions have been made; 2) the electronic submission is an exact copy of the paper document; and 3) this document has been scanned for viruses and it is free of viruses.

/s/ Kevin Joel Page

## Certificate of Compliance

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) because the document contains 12,962 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in proportionally spaced typeface using MS Word, Times New Roman 14-point font and MS Word, Times New Roman 12-point font in the footnotes.

I understand that a material misrepresentation in completing this certificate, or circumvention of the length limitations in Federal Rule of Appellate Procedure 32(a)(7), may result in the Court striking the brief and imposing sanctions.

/s/ Kevin Joel Page